UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARTIN WOODARD, ) | Civil Action No. 10-CV-327-DBH |
| Plaintiff ) | PLAINTIFF'S ITEMIZED |
| v. ) | STATEMENT OF SPECIFIC ERRORS |
| ) | Local Rule 16.3(a)(2)(A) |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| Defendant ) | |

**1. Introduction.**

The Plaintiff, Martin Woodard, filed an application for Supplemental Security Income benefits on February 20, 2008,[1] alleging disability since November 30, 2001, subsequently amended to March 7, 2008. (R. 11, 113-16, 75). He was then 38 years old and had a 14th grade education. (R. 113, 144). Mr. Woodard had no recorded earnings since 2000 and previously had worked in a variety of jobs, including forklift operator, cook and general laborer. (R. 119, 139). In his disability report, he stated that he was 6' 1", weighed 290 pounds and because of diabetes "I cannot stand or sit for very long, cramps in legs and feet all the time, due to poor circulation." (R. 137-38).

The Plaintiff's claims were denied at the initial level on May 30, 2008 and on reconsideration on December 10, 2008. (R. 11, 62-65, 69-71) He then filed a request for hearing before an administrative law judge ("ALJ") on December 22, 2008. (R. 11, 72-74).

A hearing was held before ALJ Fletcher on March 18, 2010. (R. 11, 22-51). A vocational expert was present and testified. (R. 10, 22, 23, 48-55). The judge issued an

---

[1] This was the protective filing date. (R. 134).

unfavorable decision on April 20, 2010. (R. 8-21).   In turn, the Decision Review Board ("DRB") selected the ALJ decision for review. (R. 8).

On July 22, 2010, the DRB notified the Plaintiff that it had completed its review of the ALJ's decision and "found no reason under the rules" to change the decision, making the ALJ's decision the final decision of the Commissioner in this case. (R. 1-3).[2]  Subsequently, the Plaintiff, through counsel, sought timely judicial review by this Court.  The Plaintiff hereby submits his Itemized Statement of Specific Errors pursuant to 42 U.S.C. § 405(g) and Local Rule 16.3(a)(2)(A)

Judge Fletcher determined that the Plaintiff had not engaged in work activity at the SGA level since the application date. (R. 13).   Based on a severe impairment of diabetes which did not meet or equal a listing, (R. 13), the ALJ then found that Mr. Woodard retained the RFC to perform light work subject to the restriction that he "cannot be on his feet over ½ hour at a time ... must avoid ladders, ropes, or scaffolds [and] must also avoid exposure to temperature extremes." (R. 13-14).

At Step 4 of the sequential evaluation process the ALJ found that the Plaintiff did not have any past relevant work. (R. 16).  At Step 5, the judge took vocational testimony, and relying on three jobs cited by the vocational expert (charge account clerk, dowel inspector and final assembler), determined that Mr. Woodard was able to make "a successful adjustment to other work that exists in significant numbers in the national economy."  Accordingly, the judge found

---

[2] The DRB, in affirming the ALJ, commented on counsel's argument that the ALJ had improperly refused to give weight to the views of the treating physician.  Interestingly, although counsel's letter referred to both the physical and mental RFC forms by Dr. MacDonald, the DRB carefully couched its language as relating only to the mental form.  It made no specific reference to the physical form by Dr. MacDonald or the ALJ's failure to give significant weight to that form (R. 1). (Counsel's letter, dated April 30, 2010, appears at R. 6-7 in this record.)

that the Plaintiff was not disabled. (R. 17).

As explained below, the ALJ's findings are not supported by substantial evidence or are based on a misapplication of law.

**2. The ALJ relied upon inadequate vocational testimony to support his Step 5 finding; the VE specified only "groups of jobs" rather than citing number of specific DOT code-identified jobs.**

Here the VE concluded that based upon the RFC given by the ALJ, Mr. Woodard could perform only sedentary jobs. She gave three jobs, charge account clerk, dowel inspector and final assembler. The testimony here was not as precise as in some other cases. However, this is the same vocational expert, Jane Gerrish, whose testimony was considered by the Court recently in the matter of *St. Pierre v. Astrue*, Docket No.10-CV-104-JAW.[3]

As in that case, the VE here acknowledged that the numbers she gave were not for individual jobs <u>but rather for groups of jobs</u>. Specifically, she acknowledged that the incidence numbers were for census code groupings, stating: "the numbers are based on census codes, and census codes are groups of DOT codes." (R. 51).

This is the same issue as in *St. Pierre*, *supra*. It was previously considered by the Court in *Clark v. Astrue*, Docket No. 09-390, at 5 (D. Me. 2010), *aff'd* Aug. 9, 2010. While the testimony here is somewhat more abbreviated, it is nonetheless sufficient to establish the basic point; the numbers given by the vocational expert are not numbers for the identified jobs but rather for large occupational grouping. Indeed, the VE conceded, taking the assembler job as an example, that those jobs are in a large census code grouping. Further, she conceded that there are jobs at other exertional levels and skill levels contained in that same code grouping. Thus the

---

[3] Argued December 17, 2010.

testimony established the basic point raised in *Clark*, namely that there was not sufficient evidence to establish at step 5 that the specific jobs that VE actually testified that Mr. Woodard could do existed in significant numbers since numbers for those individual jobs cannot be factored out of the larger group numbers given by the VE.

   **3.  The ALJ erred in giving little weight to Dr. MacDonald, a treating source.**

Here the ALJ concluded that he need not give significant weight to the opinion of Dr. MacDonald, the treating physician.  He based that conclusion on the fact that Dr. MacDonald had only begun seeing Mr. Woodard in December, 2009, a few months prior to the March, 2010 hearing.  However, the First Circuit recently made clear that is not a sufficient basis for rejecting the treating physician's opinion.  In *Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2009), the Court held:

> In concluding that claimant could perform light to sedentary work, the ALJ gave "little weight" to Dr. Ali's RFC assessment, and she provided several unpersuasive reasons for this decision. First, the ALJ noted that, during the relevant period, Dr. Ali had seen claimant only three times at roughly three-month intervals. While the length of time that a medical source has been treating an individual is a relevant factor in evaluating the weight to be given to that source's opinions, see 20 C.F.R. § 404.1527(d)(2)(i), the ALJ here offered no explanation for, or citation in support of, her belief that Dr. Ali's treatment relationship with claimant had been too abbreviated to enable him to offer an informed opinion about claimant's physical capabilities. Nor do we think that it is obvious to a lay person such as the ALJ that Dr. Ali had not treated claimant on a sufficient number of occasions over a sufficient amount of time.

The same reasoning applies in this case.  While it is true that Mr. Woodard had only seen Dr. MacDonald a few times, the ALJ gave no explanation for why that limited contact was not sufficient to allow the doctor to form a valid opinion on the issue of Mr. Woodard's limitations, instead saying only that the "undersigned is discounting the Mental and Physical RFCs ... provided by Dr. MacDonald as he has only been seeing the claimant since December, 2009." (R. 16).

This error was not harmless. Dr. MacDonald's opinions on what Mr. Woodard could still do despite his impairments would have substantially altered the RFC adopted by the ALJ in this case. The physical RFC opinions, if adopted, would have reduced Mr. Woodard to below the sedentary level (R. 356-57). Dr. MacDonald's opinions of what Mr. Woodard could still do despite his impairments placed him at lifting at the sedentary (10 pound) level but contained further limitations to less than sedentary levels for sitting and standing and/or walking as well as limitations on stooping and arm use that were significant (R. 357-58).

Additionally, Dr. MacDonald's opinions limited attention and concentration as well as other mental functions (R. 358, 354). In short, the ALJ's rejection of Dr. MacDonald's limitations was error and was not harmless.

Moreover, as in *Soto-Cedeno v. Astrue*, 380 Fed. Appx. 1 (1st Cir. 2010), the treating physician was seeing Mr. Woodard in a period well after the last DDS evaluation which was a year earlier in December, 2008 (R. 249-256). Thus there was no conflicting opinion as to the period following the December, 2008, DDS assessment by the non-examining physician, Dr. Hayes. The same is true of the mental limitations. The most recent DDS mental form (PRTF) was also dated December of 2008. That form left open the possibility that there were mental limitations, concluding only that there was insufficient information (R. 235).

## CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully prays that the Court reverse the adverse decision of the Commissioner and remand the case for a new hearing.

DATED: December 21, 2010                    /s/Francis M. Jackson
                                            Francis M. Jackson, Me. Bar No. 00045

5

CERTIFICATE OF SERVICE

      I hereby certify that on December 20, 2010, I electronically filed Plaintiff's statement of errors and fact sheet with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following attorney(s):

  Jason W. Valencia , Esq., SAUSA
  Office of General Counsel, Region I
  625 JFK Federal Building
  Boston, MA 02203
  (617)565-4277
  [Jason W. Valencia @ssa.gov](mailto:Jason W. Valencia @ssa.gov)

and I hereby certify that there are no non-registered participants.

                                        /s/ Francis M. Jackson
                                        Francis M. Jackson, Me. Bar No. 00045
                                        Counsel for the Plaintiff

JACKSON & MacNICHOL
238 Western Avenue
South Portland, ME 04106
(207) 772-9000
[mail@jackson-macnichol.com](mailto:mail@jackson-macnichol.com)