UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARTIN WOODARD,                )
                               )
        Plaintiff              )
                               )
v.                             )   No. 1:10-cv-327-DBH
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security, )
                               )
        Defendant              )


## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of diabetes, Finding 2, Record at 13; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) and could lift/carry 10 pounds and up to 20 pounds occasionally, sit for six hours, and stand/walk for six hours in an eight-hour workday, but could not be on his feet for more than a half-hour at a time, and had to

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

avoid ladders, ropes, scaffolds, and exposure to temperature extremes, Finding 4, *id*. at 13-14; that, considering his age (38 years old, defined as a younger individual, on the date his application was filed), education (high school plus two years of additional education), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 16; and that he, therefore, had not been disabled since February 20, 2008, the date his application was filed, Finding 10, *id*. at 17. The Decision Review Board found no reason to disturb the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on two bases: that the administrative law judge (i) relied on flawed vocational expert testimony, specifying numbers of groups of jobs rather than of specific DOT code-identified jobs, and (ii) erred in giving little weight to the mental and physical RFC assessments of a treating source, Michael MacDonald, M.D., Ph.D. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 12) at 3-5. I conclude, and recommend that the court find, that reversal and remand are warranted on the basis of the administrative law judge's handling of Dr. MacDonald's physical RFC opinion. For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points of error, neither of which independently necessitates reversal and remand.

### A. Dr. MacDonald's Physical RFC Opinion

Dr. MacDonald submitted a physical RFC opinion dated March 5, 2010, finding the plaintiff limited in a number of respects by diabetes, diabetic neuropathy, and restless leg syndrome; for example, that he could lift/carry only 10 pounds and less than 10 pounds frequently, stand and/or walk for less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday. *See* Record at 356-57. Dr. MacDonald also noted, *inter alia*, push/pull, postural, manipulative, visual, and environmental limitations. *See id*. at 357-59.

The administrative law judge rejected this opinion, as well as Dr. MacDonald's mental RFC assessment, discussed *infra*, on the sole basis that Dr. MacDonald had "only been seeing the [plaintiff] since December 2009." *Id*. at 16.

Opinions of treating sources are never entitled to controlling weight when they address RFC, a determination reserved to the commissioner. *See* 20 C.F.R. § 416.927(e)(2)-(3) (as to

RFC, even the opinions of treating sources are accorded no "special significance"). Nonetheless, an administrative law judge must supply "good reasons" for discounting the RFC opinion of a treating source. *See id.* § 416.927(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [a claimant's] treating source's opinion"); *see also, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-5p"), at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted").

As the plaintiff argues, *see* Statement of Errors at 4, the rejection of a treating source's opinion solely on the basis of the short length of a treatment relationship is error, *see, e.g., Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2009) (the discounting of a treating source's RFC opinion on the basis that he had seen a claimant only three times was unpersuasive in circumstances in which the administrative law judge "offered *no* explanation for, or citation in support of," the belief that the relationship was too abbreviated to enable an informed opinion about the claimant's physical capabilities, and such a conclusion was not otherwise obvious to a layperson) (emphasis in original).

At oral argument, counsel for the commissioner argued that *Johnson* should not be construed to require a finding that any physician who has seen a claimant on more than one occasion is automatically a "treating source" for purposes of the commissioner's regulations. *See* 20 C.F.R. § 416.902 (A "treating source" is defined as "your own physician, psychologist, or

other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). She cited *Petrie v. Astrue*, 412 Fed. Appx. 401 (2d Cir. 2011), for the proposition that "a treating physician is given extra weight because of his unique position resulting from the *continuity* of treatment he provides and the doctor/patient *relationship* he develops" and, hence, a physician who has only examined a claimant once or twice did not see the claimant regularly and did not develop a physician/patient relationship with the claimant. *Petrie*, 412 Fed. Appx. at 3 (citations and internal quotation marks omitted) (emphasis in original).

She distinguished *Johnson* on the basis that, in *Johnson*, the treating source had seen the claimant three times at approximately three-month intervals, whereas here, Dr. MacDonald had seen the plaintiff only twice at approximately a one-month interval, and his second set of progress notes was cursory.

*Johnson* does not mandate that a physician who has seen a claimant only once or twice be deemed a "treating source." Yet, in this case, the administrative law judge accepted that Dr. MacDonald was "the [plaintiff's] current treating physician[.]" Record at 15. He cited the brevity of the relationship for the purpose of explaining the weight he had elected to give Dr. MacDonald's mental and physical RFC opinions, not for the purpose of calling into question whether Dr. MacDonald qualified as a "treating source." *See id*. at 16. Counsel for the commissioner did not contend, at oral argument, that it would have been obvious to a layperson that Dr. MacDonald's treatment relationship with the plaintiff was too brief to enable a meaningful assessment of his RFC. In the circumstances, pursuant to *Johnson*, the administrative law judge was obliged to explain why he found the treating relationship too cursory to enable an informed RFC opinion. He erred in failing to do so.

5

The error is not harmless. While the plaintiff's physical impairments had been deemed nonsevere as of April 23, 2008, by a Disability Determination Services ("DDS") nonexamining consultant, Donald Trumbull, M.D., *see* Record at 218, 220, and a second DDS nonexamining consultant, Robert Hayes, D.O., found insufficient evidence as of December 5, 2008, to evaluate the claim because the plaintiff failed to return his reconsideration application, *see id*. at 256, Dr. MacDonald noted on December 28, 2009, that the plaintiff complained that the symptoms of his diabetes and restless leg syndrome had worsened, *see id*. at 351. Dr. MacDonald found the plaintiff positive for fatigue, bone/joint symptoms, and a neurological sensory deficit of glove hypoesthesia. *See id*. at 352-53. The record contains no assessment of the plaintiff's RFC by a DDS consultant after December 2008, and no medical expert was present at his hearing on March 18, 2010. *See id*. at 22.[2]

In the circumstances, remand and reversal are warranted for reconsideration of the weight to be afforded to Dr. MacDonald's physical RFC opinion.

## B. Dr. MacDonald's Mental RFC Opinion

I reach a different conclusion with respect to Dr. MacDonald's mental RFC opinion, the rejection of which was expressly considered by the Decision Review Board. That body stated:

> The Decision Review Board further reviewed the opinion of Michael MacDonald, M.D., regarding [the plaintiff's] mental limitations. The Board finds that this opinion warrants little weight. The medical evidence of record does not support a finding that [the plaintiff] ha[s] a severe mental impairment. Dr. MacDonald is a Family Medicine practitioner and his opinion regarding related functional limitations is not supported by, or consistent with, any other medical evidence in the record.

---

[2] In addition, as the plaintiff's counsel pointed out at oral argument, a different provider, Kenneth B. Tolman, PAC, noted on July 23, 2009, that the plaintiff admitted to a loss of sensation in his feet, particularly in the toes. *See* Record at 314. On examination, Dr. Tolman noted abnormal findings, including absent or diminished sensation in both feet to pinprick or light touch. *See id*. at 315. Neither Dr. Hayes nor Dr. Trumbull had the benefit of that record, either.

6

*Id*. at 1 (citations omitted).

Review of the record confirms that these observations, combined with the brevity of Dr. MacDonald's treatment of the plaintiff, constitute good reasons for rejecting his mental RFC assessment. Although Dr. MacDonald indicated that the plaintiff was markedly limited in, or effectively precluded from, performing several work-related mental functions, including the abilities to remember locations and work-like procedures and to understand and remember very short and simple instructions, *see id*. at 354, the underlying record contains little indication of mental health impairment, including in Dr. MacDonald's own notes.

The plaintiff did complain to a prior treating source, Mark D. Hanson, PA-C, on September 8, 2005, that he was depressed almost all of the time. *See id*. at 265. However, after Hanson prescribed fluoxetine, he noted "[s]ignificant improvement" in the plaintiff's depression as of October 3, 2005. *See id*. I find no further mention of depression or other mental health problems until July 23, 2009, when the plaintiff reported to Tolman that he had been out of all of his medications except insulin for more than two months, that his mood had been poor, and that he felt depression coming on again. *See id*. at 314. He requested depression medication. *See id*. Tolman ordered the plaintiff's medications refilled, *see id*. at 316, and Dr. MacDonald noted no depression or other mental health problems in his two office notes of record, for visits on December 28, 2009, and February 5, 2010, *see id*. at 349-53. In addition, on May 26, 2008, on the then-extant record, a DDS nonexamining consultant, Brenda Sawyer, Ph.D., assessed the plaintiff's mental impairments as nonsevere, *see id*. at 221, and on December 4, 2008, a second DDS nonexamining consultant, Thomas Knox, Ph.D., found insufficient evidence to assess the plaintiff's mental impairments because he had failed to return his reconsideration application, *see id*. at 235, 247.

On this record, and for the reasons given not only by the administrative law judge but also by the Decision Review Board, the commissioner supportably discounted Dr. MacDonald's mental RFC opinion.

### C. Vocational Expert Testimony

A vocational expert present at the plaintiff's hearing testified that a person with the hypothetical RFC posited by the administrative law judge could perform the jobs of charge account clerk, with 189 such jobs in Maine and 32,790 nationally, dowel inspector, with 53 such jobs in Maine and 13,167 nationally, and final assembler, with 152 such jobs in Maine and 28,265 nationally. *See id*. at 49-50. The administrative law judge relied on her testimony in finding the plaintiff capable of performing work existing in significant numbers in the national economy. *See id*. at 17. At the plaintiff's hearing, her attorney asked the vocational expert several questions, including the following:

> Q First the source for your numbers?
>
> A It's the Employment Statistics Quarterly.
>
> Q Is that the Occupational Employment Quarterly?
>
> A Yes.
>
> Q And isn't it true that the Occupation[al] Employment Quarterly while it does say that it gives you jobs based on exertional level and skill level, that it's not a precise methodology that they're simply dividing the percentage of DOT codes that correspond with the individual exertional numbers?
>
> A The numbers are based on census codes, and census codes are groups of DOT codes.
>
> Q And isn't it true that the assembler jobs that you gave us are in quite a large census code?
>
> A Yes.

> Q And based on your testimony you're saying that there are other exertional levels and skill levels contained in these census codes?
>
> A Yes.

*Id*. at 51. The administrative law judge later asked: "[J]ust in terms of the numbers, and again they're granted the[y] are derived from the census data. Based on your professional experience do those numbers sound realistic in terms of availability?" *Id*. at 54-55. The vocational expert responded: "Yes they do." *Id*. at 55.

The plaintiff argues that the vocational expert's testimony regarding the incidence of available jobs is inadequate for the same reasons set forth in *St. Pierre v. Astrue*, No. 1:10-cv-104-JAW, 2010 WL 5465635 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011), and *Clark v. Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010). In both *St. Pierre* and *Clark*, "the vocational expert . . . essentially admitted that he did in fact rely on published raw numbers, which pertained not to the specific DOT code[-i]dentified jobs at issue but rather to *groups of jobs* of differing skill and exertional levels that happened to contain the three specific jobs." *St. Pierre*, 2010 WL 5465635, at *3 (quoting *Clark*, 2010 WL 2924237, at *3) (emphasis in original).

Nonetheless, as counsel for the commissioner noted at oral argument, in this case the vocational expert went on to testify that, based on her professional experience, the numbers sounded "realistic in terms of availability[,]" Record at 54-55, in other words, that she had given realistic numbers with respect to the three identified jobs. That she relied on professional expertise in giving what she felt were realistic numbers for the jobs in question distinguishes this case from *St. Pierre* and *Clark* and aligns it more closely with *Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010), which this court distinguished from *Clark* on the basis that the vocational expert relied in part on his 20

9

years of experience when he allocated 10 percent of the job numbers under an SOC [selected characteristics of occupation] code to the individual occupations that he testified the claimant could perform. *See Decker*, 2010 WL 4412142, at *2-*3.

The plaintiff accordingly falls short of demonstrating entitlement to reversal and remand on this basis.[3]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[3] At oral argument, the plaintiff's counsel challenged the administrative law judge's reliance on the vocational expert's testimony on a different basis, contending that the testimony did not support an alternative finding that the posited limitations, including the restriction against standing for more than a half-hour at a time, would have no more than a minimal impact on the sedentary work base. *See* Record at 17, 54. As counsel for the commissioner rejoined, this argument, made for the first time at oral argument and not included in the statement of errors, is deemed waived. *See, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).